Steven **GIBBANY**, # 83516, Petitioner,

v.

**STATE OF OKLAHOMA, DEPARTMENT OF CORRECTIONS and Richard Crisp, Warden, Respondents.**

**No. CIV–75–0627–D.**

United States District Court, W. D. Oklahoma.

April 19, 1976.

Richard R. Bailey, Oklahoma City, Okl., for petitioner.

Larry Derryberry, Atty. Gen. by James C. Peck, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

## MEMORANDUM AND ORDER

DAUGHERTY, District Judge.

The petitioner, a State prisoner confined in the Oklahoma State Penitentiary at McAlester, Oklahoma, submitted to this court his Petition for Writ of Habeas Corpus challenging his detention by virtue of the judgment and sentence of the District Court of Oklahoma County, State of Oklahoma, in case No. CRF–71–1544 on the ground that his parole from the sentence in said case was unconstitutionally revoked. After reviewing the files and records in the case the court determined that the petitioner had exhausted his State remedies and that an evidentiary hearing in this court was necessary to determine whether in fact a final revocation hearing in the revocation process was held and if so whether it met the requirements of due process set forth in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Pursuant to the authority of *Reed v. United States*, 438 F.2d 1154 (C.A.10 1971) the court directed that the issues be presented to the court on written interrogatories and answers thereto from all witnesses possessing pertinent information. The court appointed counsel to represent the petitioner.

The parties have filed herein the depositions of five witnesses and advised the court that the case is ready for determination and decision by the court. Having examined the files and records herein and the interrogatories and cross-interrogatories submitted by the parties, together with the briefs of counsel the court makes the following Findings of Fact and Conclusions of Law:

## I. FINDINGS OF FACT

1. The petitioner was convicted in said case No. CRF–71–1544 of the crime of Unauthorized Use of a Motor Vehicle on August 2, 1971.

2. On November 10, 1971, he was also convicted of Larceny of an Automobile in the District Court of Oklahoma County, case No. CRF–71–2209.

3. The petitioner was received at the Oklahoma State Penitentiary on November 19, 1971, to serve consecutive sentences totaling 10 years in the two cases.

4. On June 1, 1973, the petitioner was granted a parole by the Governor of the State of Oklahoma.

5. On January 8, 1975, in case No. CRF–74–2659, District Court of Oklahoma County, the petitioner entered a plea of guilty to the crime of Unauthorized Use of a Motor Vehicle After Former Conviction of a Felony and was sentenced to the term of one year imprisonment.

6. After the petitioner was returned to the Oklahoma State Penitentiary to serve the sentence in said case No. CRF–74–2659 he was advised on January 20, 1975, that the Department of Corrections for the State of Oklahoma had requested a revocation of his parole because of the latest conviction. He was informed that a preliminary hearing would be conducted at the Oklahoma State Penitentiary on February 3, 1975, at 10:00 a. m. at which time he could appear, speak and present evidence including witnesses and confront his accusers. The petitioner acknowledged in writing that he had received a copy of this written notification of the reason for the revocation request and the date of the preliminary hearing.

7. On February 3, 1975, a preliminary hearing was conducted by a disinterested hearing officer with petitioner present in person. Having heard the evidence concerning petitioner's conviction in said case No. CRF–74–2659 and the petitioner presenting no evidence the hearing officer found probable cause to believe that the petitioner had violated the conditions of his parole. The petitioner declined to waive a final revocation hearing.

8. A final parole revocation hearing (executive hearing) was convened at the Oklahoma State Penitentiary at McAlester, Oklahoma, March 23, 1975, for the petitioner. Mr. Robert H. Mitchell, the Governor's Legal Counsel acted in the capacity of Hearing Officer for this hearing on behalf of the Governor. In addition to the petitioner there were also present Mr. C. E. Williams, Department of Corrections; Mr. A. M. Hamilton, Department of Corrections; and Mr. Leon Davidson, Department of Corrections.

9. The petitioner was given no advance notice of the time and place of the final revocation hearing. He was summoned from his cell on March 23, 1975, and advised that he was wanted in the Warden's office. When he arrived in the office he became aware for the first time that his final revocation hearing was then to be conducted.

10. At the hearing the petitioner admitted his identity to the Hearing Officer. The Hearing Officer presented to the petitioner his Parole Certificate which contained the terms and conditions of parole and the petitioner identified his signature at the bottom of that Certificate. Mr. Williams, for the Department of Corrections, explained that the reason for the request for a revocation was the petitioner's failure to obey the law which was based upon his arrest and plea of guilty to the crime of Unauthorized Use of a Motor Vehicle for which he had received a one year sentence by the District Court of Oklahoma County on January 8, 1975. The Hearing Officer then examined the complete file including a copy of the judgment and sentence on petitioner's plea of guilty in said case No. CRF–74–2659. The petitioner admitted to the Hearing Officer that he did plead guilty in that case.

11. The petitioner was afforded the opportunity to ask questions, make a statement, see the records and documents, and he was afforded the opportunity to present evidence in his own behalf but he did not

present any evidence or make any statement in mitigation.

12. The petitioner was not represented by counsel in the parole revocation proceedings and did not request the appointment of counsel.

13. The only record of the final parole revocation hearing is a memorandum prepared by Mr. C. E. Williams on March 24, 1975, and placed in the files of the Department of Corrections, Division of Probation and Parole which briefly described what had occurred at the hearing.

14. On April 7, 1975, the petitioner's parole was revoked by the Governor of the State of Oklahoma who found that the petitioner had violated the rules and conditions of his parole by his failure to obey the law and that he had been arrested and plead guilty to the crime of Unauthorized Use of a Motor Vehicle.

## II. CONCLUSIONS OF LAW

1. The preliminary hearing afforded the petitioner satisfied fully the requirements of *Morrissey v. Brewer*, supra.

2. The petitioner had no absolute right to an attorney in the parole revocation proceedings.

3. The petitioner should have received a reasonable time in advance a written notice of the final revocation hearing specifying the claimed violation and the time and place for the hearing.

4. The petitioner was not at his final revocation hearing denied any due process right as to disclosure of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses, and a "neutral and detached" hearing body.

5. Under the circumstances of this case the memorandum of Mr. Williams together with the Governor's Order of Revocation constituted a sufficient compliance with the due process requirement for a record of the proceedings.

6. A conviction and sentence to imprisonment while on parole is a reasonable ground for revoking parole under the standards of the State of Oklahoma.

7. The parole of the petitioner was not unconstitutionally revoked.

## III. COMMENT

Although the petitioner in his pleadings denied that he had received a final revocation hearing, he conceded in his interrogatories that the hearing was held March 23, 1975, at the Oklahoma State Penitentiary at McAlester, Oklahoma. The only issue therefore is the legal sufficiency of that hearing. The general requirements for due process at the final revocation hearing are:

"(a) written notice of the claimed violations of parole;

(b) disclosure to the parolee of the evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

*Morrissey v. Brewer*, supra, 408 U.S. at 489, 92 S.Ct. at 2604.

There is no absolute constitutional requirement that a parolee be afforded counsel for a parole revocation hearing, and where the parolee has been convicted of another serious crime while on parole counsel ordinarily need not be provided. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Here the petitioner did not, at any time, in the revocation proceedings, nor has he done so in this court, suggested that there were any substantial reasons which justified or mitigated the violation and made revocation inappropriate. Under these circumstances therefore he was not entitled to counsel.

The only remarkable deviation from the *Morrissey* standards is the failure to give prior written notice to the petitioner. Notice a reasonable time in advance of hearing is a part of the due process requirement. *Hickman v. Arkansas Board of Pardons and Paroles*, 361 F.Supp. 864 (E.D.Ark. 1973). The failure to accord reasonable prior notice impairs the parolee's ability to summon witnesses or prepare a defense and may render the hearing fatally defective. *Forbes v. Roebuck*, 368 F.Supp. 817 (E.D. Ky.1974), affmd., 506 F.2d 1400 (C.A.6 1974).

Because the procedures followed in petitioner's case, however, did not exactly meet the standards established by *Morrissey*, it does not necessarily follow that petitioner's revocation was invalid. The petitioner had already been convicted and was serving another sentence. He admitted that he had plead guilty in that case. By virtue of his reincarceration on the new conviction the petitioner had already been deprived of that liberty which provided the rationale for the due process pronouncements in *Morrissey*. They were designed to protect the interest of the parolee in his continued liberty. The court conceived the revocation decision as involving first, the factual determination of whether the parole of the parolee had been violated and if so, second the further determination:

"Should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? The first step is relatively simple; the second is more complex. The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts."

*Morrissey v. Brewer*, supra, 408 U.S. at 480, 92 S.Ct. at 2599.

In petitioner's case, however, the first issue was resolved by the fact of conviction and petitioner's admission. Moreover, much of the predictive function in the second stage of the inquiry as to whether the subject is able to live in society without

violating the law is preempted by the admitted and unchallenged judicial determination that he could not and did not. Where the fact of violation by the commission of a crime has already been conclusively determined by either conviction or admission, it would appear that a departure from *Morrissey* can, and should be tolerated. This is suggested in the opinion itself in directing that the case be returned to the district court to make findings as to the procedures actually followed by the Parole Board:

"If it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter. If the procedures followed by the Parole Board are found to meet the standards laid down in this opinion that, too, would dispose of the due process claims for these cases."

408 U.S. at 490, 92 S.Ct. at 2605.

Here the petitioner admitted the violation to the Hearing Officer. Conviction of a crime while on parole is a reasonable ground for revocation under the standards of the State of Oklahoma and every other jurisdiction known to this court. That ends the matter. There is no claim or showing of actual prejudice. The touchstone of due process is fundamental fairness. *Gagnon v. Scarpelli*, supra. There was no fundamental unfairness in petitioner's case.

## IV. ORDER

Accordingly, since the court has concluded that the parole of the petitioner was not unconstitutionally revoked and that he therefore is not unlawfully detained, the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.