701 P.2d 598

**Lena REAMS and William Blankenship, Plaintiffs/Appellants,**

v.

**CITY OF TUCSON, a municipal corporation, Peter Duerr, Vincent Hock, Ruthann Pfeffer, Ray Grimshaw, Robert Dedeyn, William Gilkenson, the County of Pima, a body politic, Defendants/Appellees.**

**No. 2 CA–CIV 5200.**

Court of Appeals of Arizona,
Division 2, Department A.

April 1, 1985.

Messing, McCrory & Glicksman, P.C. by Elliot Glicksman, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by Richard Davis, Tucson, for defendants/appellees City of Tucson, Duerr, Hock, Pfeffer, Grimshaw & Dedeyn.

Stephen D. Neely, Pima County Atty. by Michael D. Alfred, Tucson, for defendant/appellee Pima County.

## OPINION

BIRDSALL, Presiding Judge.

On March 12, 1980, appellant William Blankenship was arrested and charged with attempted trafficking in stolen property following a transaction in which Blankenship purchased certain weapons from an undercover police officer who allegedly informed Blankenship that the weapons were stolen. Subsequently, based solely upon the testimony of the undercover officer, the grand jury returned an indictment. The indictment was later dismissed by the trial court, however, upon motion of the state.

Two years after the arrest, Blankenship and his mother, appellant Reams, filed the present lawsuit against the City of Tucson, Pima County, and several individual city and county law enforcement officers. The complaint contained multiple counts alleging false arrest, assault, malicious prosecution, negligent hire, and intentional infliction of severe emotional distress (as to appellant Reams only). The malicious prosecution claim was apparently abandoned by the appellants, and the case was tried on the theories of false arrest, assault, and infliction of emotional distress. The jury returned verdicts in favor of the appellees on all counts. From the denial of their motion for new trial, appellants brought this appeal arguing that 1) the trial court committed reversible error in admitting evidence that Blankenship had been indicted following his arrest and in instructing the jury that the indictment was evidence of probable cause for the arrest, and 2) the trial court erred in denying appellants' motion for mistrial following the appellees' reference before the jury to Blankenship's prior felony conviction.

Resolution of the first issue requires additional factual background. Prior to the transaction between Blankenship and the undercover police officer, the latter was wired with a "body bug" which was designed to transmit their conversation to other officers in the vicinity. The device either failed to function properly or was not turned on until midway through the conversation. The undercover officer did not testify at trial. Other officers who participated in the arrest and who were listening to the transmission of the conversation testified that they heard the officer state that "this is hot shit" and that such language was common parlance for stolen goods. This statement appears to be the only language relied upon by the appellees as conveying to Blankenship the nature of the goods. Blankenship, on the other hand, testified that he had no idea that the guns were stolen and that he did not hear the officer's statement quoted above.

Appellees filed a motion for pretrial summary judgment on the contention that the grand jury's subsequent indictment of Blankenship conclusively established the existence of probable cause for the arrest. The motion was denied. Immediately prior to the commencement of the trial, in the course of resolving certain evidentiary matters, the following exchange took place between the court and counsel for appellants:

"THE COURT: And as to the stipulation of the grand jury having returned an indictment you will stipulate to that, though, there will be some argument still, I suppose.

MR. GLICKSMAN: Yeah, that's the basis for a legal argument that's going to come up later before this Court. But yes, I'll stipulate that Bill Blankenship was indicted by a Pima County Grand Jury for the arrest that he was arrested for."

During opening argument, counsel for the appellees told the jury that Blankenship's case was presented to the grand jury following his arrest, and that they "concluded that they were going to return an indictment because there was probable cause to believe that Mr. Blankenship had in fact attempted to buy stolen property." Although appellants did not object at that point, immediately following opening argument and out of the presence of the jury, appellants raised their objection, claiming that the stipulation as to the indictment was only for purposes of the argument on the summary judgment and legal arguments as to the effect of the indictment on the issue of probable cause. Appellants further objected that evidence of the fact of the indictment was irrelevant and misleading and should therefore not be admitted.

On the second day of trial, Blankenship was asked on cross-examination if he had been indicted by the grand jury following his arrest. Appellants' objection on grounds of relevance was sustained without discussion. Following the close of appellants' case, however, appellees requested the court to reconsider, and the following day the court decided to admit the evidence. In light of this ruling, the par-

ties agreed to a stipulation which was read to the jury and which informed the jury that only the undercover officer had appeared before the grand jury, and that as a result of his testimony the grand jury indicted Blankenship. At the close of the trial, the jury was instructed, over appellants' objection, that the grand jury's indictment was evidence of probable cause.

■ Appellees argue that appellants have waived their right to raise this issue on appeal by entering into the stipulation which was read to the jury without registering an objection. We disagree. Appellants maintained a continuing objection to the introduction of evidence pertaining to the grand jury proceedings, and the purpose of the stipulation was simply to obviate the necessity of formal proof of either the testimony heard before the grand jury or the indictment itself.

Appellees further argue that the evidence was clearly relevant, and that since this was the only ground of objection before the trial court, no error resulted from its admission. Appellees rely on the Restatement (Second) of Torts § 664 (1977), which provides:

"1. In the absence of evidence of probable cause, the refusal of a grand jury to indict the accused, if unexplained, is conclusive of the lack of probable cause. 2. The indictment of the accused by a grand jury is evidence that the person who initiated the proceedings had probable cause for initiating them."

We note that this section is found among the provisions of the Restatement pertaining to malicious prosecution, rather than false arrest. Even if we were to agree with the position of the Restatement with respect to the relevance of an indictment to the issue of probable cause in an action for malicious prosecution, an issue we do not decide, such would not be conclusive with respect to its relevance in an action for false arrest.

■ False arrest, a species of false imprisonment, is the detention of a person without his consent and without lawful authority. *Slade v. City of Phoenix*, 112 Ariz. 298, 541 P.2d 550 (1975); *Creamer v. Raffety*, 145 Ariz. 34, 699 P.2d 908 (App. 1984). A plaintiff establishes a prima facie case by showing that he was arrested by the defendant without a warrant, and the burden then devolves upon the defendant to establish that the arrest was founded upon probable cause. *Whitlock v. Boyer*, 77 Ariz. 334, 271 P.2d 484 (1954). Probable cause exists if the arresting officer at the time of the arrest has reasonable grounds to believe that a felony has been or is being committed and reasonable grounds to believe that the person arrested committed the offense. *Slade v. City of Phoenix*, supra. Thus, the critical inquiry is to the facts as they existed at the time of the arrest, and not afterward. In contrast, although lack of probable cause is an element of a claim for malicious prosecution, the issue is probable cause to initiate or continue a criminal proceeding, which is not necessarily tied to events at the time of the plaintiff's arrest.

Whether the subsequent indictment of Blankenship is relevant and therefore admissible depends upon whether it constitutes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Rules of Evidence, 17A A.R.S. In the present action, the facts to be established are those which would support a legal determination that there was probable cause for the arrest.

An indictment is a written statement charging the commission of a public offense, Rule 13.1, Rules of Criminal Procedure, 17 A.R.S., and is returned by the grand jury "if, from all the evidence taken together, it is convinced that there is probable cause to believe the person under investigation is guilty of such public offense." A.R.S. § 21–413. In reality, it is nothing more than an expression of the opinion of at least nine people as to the credibility of the evidence presented to it by the prosecutor, and as such, it has no tendency whatsoever to make the existence of the underly-

ing facts either more or less probable. Additionally, the indictment will not necessarily be based solely on the facts as they existed and were known to the arresting officer at the time of the arrest, but may in part be predicated upon evidence developed in the interim.

 After-the-fact judicial participation cannot validate an unlawful arrest. For these reasons, we hold that the subsequent indictment of Blankenship was irrelevant and should not have been admitted. Nor can we say that its admission was harmless error. Since the events surrounding the arrest were witnessed only by Blankenship and the undercover officer, resolution of the probable cause issue hinged on the credibility of their respective accounts. Admission of evidence of the indictment and the trial court's corresponding instruction to the jury could only serve as a kind of imprimatur on the statements of the prosecution's witnesses, and were inherently prejudicial. The judgment must therefore be reversed and the matter remanded for a new trial on the false arrest claim. Although Lena Reams joined in the notice of appeal, no issue has been raised regarding any claim pertaining to her. We therefore deem her appeal to be abandoned and affirm the judgment as to her.

Because of our resolution of this matter, and because we assume that references to Blankenship's prior conviction will not recur, we do not reach the remaining issue.

HOWARD and FERNANDEZ, JJ., concur.