730 P.2d 873

**Diane MORN, individually and as guardian ad litem for Rebecca Morn, Daniel Morn, Theresa Morn and Kristyn Morn, minors; Georgia Joyce Collins, individually and as guardian ad litem for Jolonda Joyce Collins, Gordon Fletcher and Ronoska Fletcher, minors, Plaintiffs/Appellants,**

v.

**CITY OF PHOENIX, a body politic of the State of Arizona; Rocky Franklin and Jane Doe Franklin, his wife; David Bower and Jane Doe Bower, his wife, Defendants/Appellees.**

No. 2 CA–CV 5871.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 16, 1986.

Owens, Rybarsyk & Nussbaum, P.C. by Michael A. Carragher, Scottsdale, for plaintiffs/appellants.

Jones, Skelton & Hochuli by William R. Jones, Jr. and Bruce D. Crawford, Phoenix, for defendants/appellees.

## OPINION

LACAGNINA, Judge.

This appeal is taken from a jury verdict and damage award in favor of two City of Phoenix police officers arising out of their counterclaim alleging abuse of process. We believe the trial court erred in denying a motion for directed verdict at the close of the counterclaimant's case and a motion for judgment notwithstanding the verdict, and we reverse.

Appellant Diane Morn[1] brought an action individually and as guardian ad litem for her four children against the City of Phoenix and two police officers for conversion, assault, intentional infliction of emotional distress, false imprisonment and defamation, all arising out of a November 6,

---

1. The notice of appeal lists Diane Morn, et. al, as appellants. However, since all arguments raised on appeal relate to Diane Morn, all judgments against Joyce Collins, both individually and in her representative capacity, are affirmed.

1982 search of the Morn residence. The search was conducted pursuant to a warrant issued in a criminal investigation of Morn's husband by the City of Phoenix and the State of Arizona. The defendants answered denying the allegations of the complaint and counterclaimed alleging malicious prosecution and/or abuse of civil process. The joint pre-trial statement identified the issues for trial as Morn's claims of assault, false arrest and/or imprisonment and defamation, and the police officers' counterclaims for abuse of process. The jury returned a verdict in favor of the police officers, awarding them $5,000 each as compensatory damages and $10,000 each as punitive damages. The court treated Morn's motion for judgment n.o.v. on the counterclaim as a motion for new trial and denied it.

Morn makes two arguments on appeal. First, she argues the trial court erred in permitting the police officers to pursue the counterclaim for abuse of process because the counterclaim was fatally defective in that it did not contain sufficient specific facts to give her notice of the basis for the claim. Second, she contends that the trial court should have directed a verdict in her favor or granted her motion for judgment n.o.v.

■ We believe the abuse of process counterclaim met the requirements of Rule 8(a), Ariz.R.Civ.P., 16 A.R.S. As a notice pleading state, Arizona requires a statement of the ground upon which the court's jurisdiction depends, a statement of the claim showing that the pleader is entitled to relief and a demand for judgment. The counterclaim in this case sets forth the elements of the tort and alleged facts to support the claim. *See, e.g., Verde Water and Power Co. v. Salt River Valley Water Users Association,* 22 Ariz. 305, 197 P. 227, *cert. denied,* 257 U.S. 643, 42 S.Ct. 53, 66 L.Ed. 412 (1921).

■ Morn's second argument, that the trial court should have granted a directed verdict in her favor or judgment n.o.v., is more persuasive. The basis of the officers' counterclaim was an allegation that Morn had attempted to use civil process to achieve an objective which had absolutely no relation to the claims framed in her complaint. The Restatement (Second) of Torts § 682 (1977) sets forth the general principle of the tort of abuse of process and states that liability will be imposed upon one who uses the legal process against another "primarily to accomplish a purpose for which it is not designed." Division One of this court has noted that Arizona case law, although not extensive, is in accord with the Restatement view. *Nienstedt v. Wetzel,* 133 Ariz. 348, 651 P.2d 876 (App. 1982). The essential elements of the tort include a wilful act in the use of judicial process for an ulterior purpose not proper in the regular conduct of the proceedings. The court in *Nienstedt* cites the Restatement and its comments in stating that although the process "may have been properly obtained or issued ... [i]t is the subsequent misuse which constitutes the misconduct for which liability is imposed." *Id.* at 353, 651 P.2d at 881. However, the court in *Neinstedt* recognized that there is no action for abuse of process when the defendant uses the process for its authorized or intended purpose, "even though with bad intentions," or if "there is an incidental motive of spite." *Id.*

Two previous decisions of this court, *Bird v. Rothman,* 128 Ariz. 599, 627 P.2d 1097, *cert. denied,* 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (App.1981), and *Rondelli v. County of Pima,* 120 Ariz. 483, 586 P.2d 1295 (App.1978), help to explain the nature of the tort. In *Bird,* the appellant's abuse of process claim was founded on an allegation that one party brought another into the underlying lawsuit in order to force a settlement. This court, citing *Rondelli* and *Joseph v. Markovitz,* 27 Ariz.App. 122, 551 P.2d 571 (1976), found that there was no evidence of subsequent misuse of process after process lawfully issued, and "[a]n ulterior purpose alone cannot constitute abuse of process. There was no proof of an improper use of judicial process here, as the purpose of settlement is includable in the goals of proper process." 128 Ariz.

at 602, 627 P.2d at 2000. In *Rondelli,* this court again stressed the elements of misuse of process justified in itself for an end other than for its intended purpose. "It is an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose." 120 Ariz. at 489, 586 P.2d at 1301, citing *Younger v. Soloman,* 38 Cal.App.3d 289, 297, 113 Cal.Rptr. 113, 118 (1974). In *Rondelli* we found that obtaining a bench warrant and later arresting Rondelli pursuant to the warrant did not show an ulterior purpose. In addition, we found no evidence that the City or county "acted wilfully to procure [Rondelli's] arrest for a corporate debt he was not liable for" but that the only reasonable inference was that a mistake was made. Therefore, the action did not lie. 120 Ariz. at 489, 586 P.2d at 1301.

■ In ·this case, the officers did not produce any evidence that the process was used by Morn to obtain a collateral advantage or any form of extortion. Rather, the evidence showed that the legal process was used primarily to seek redress for wrongs believed by Morn to have occurred along with the incidental purpose of, perhaps, "getting even" for these alleged wrongs.

The police officers devote a substantial portion of their answering brief arguing that their counterclaim alleged that Morn had used the litigation not "to address any perceived grievances resulting from the search, but rather as a form of extortion." According to the officers, Morn knew it was not just the filing of the complaint but its continuation which was the basis for the counterclaim. As counsel for the police officers explained to the court at a bench conference on July 8, 1985:

> The basis of the counterclaim is that the investigation was ongoing. Mr. Morn knew it. Mrs. Morn knew it. They filed the lawsuit to try and keep the police department from continuing the investigation and, in fact, tie in Mr. Morn, which they did anyway.

> [T]he abuse is that they have continued this lawsuit even though they know there was absolutely no basis for it.

The lawsuit was filed in November 1983, one year after the search of the Morn house. Georgia Joyce Collins, her grandchildren and the Morn children testified at trial and described events occurring at the time of the search which support the claim of unlawful detention. The officers' testimony contradicted that evidence. The indictment naming Mr. Morn was not returned from the grand jury until January 1984. The officers' argument that the lawsuit was filed to prevent the authorities from continuing the investigation is unsupported by any evidence in the record. While the record does show that the Morns were obviously aware of the investigation a year earlier, there is no showing that they knew the investigation was continuing at the time Mrs. Morn filed her lawsuit. The claim that the lawsuit was filed to abort a continuing investigation is mere conjecture. Indeed, a more believable scenario would have been for Mrs. Morn to await the outcome of an investigation, if she knew one was continuing, and then if an indictment were forthcoming, truly abuse the civil process by filing the lawsuit as leverage to hinder the prosecution.

■ The additional argument that abuse of process also exists by virtue of Mrs. Morn's failure to terminate her litigation after she allegedly became aware of its baseless nature is also without merit. "Abuse of process ... is not commencing an action or causing process to issue without justification." Prosser and Keeton on the Law of Torts § 121 at 897 (5th ed. 1984). If an abuse of process claim will not lie in an instance where process was issued without justification, it certainly will not lie where process was originally issued and then continued without justification. As stated by Prosser and Keeton:

> The purpose for which the process is used, once it is used, is the only thing of importance. Consequently, in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding

has terminated in his favor or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause ... and that even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created. Thus ... if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process.

[S]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the course of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in a course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort.

Some of the decisions have said that there must be an improper act, such as an extortion attempt, after the process has issued and that an act committed beforehand is not enough. Most of these cases probably stand only for the narrower proposition that there must be an overt act and that bad purpose alone is insufficient. Thus a demand for collateral advantage that occurs before the issuance of process may be actionable, so long as process does in fact issue at the defendant's behest, and as a part of the attempted extortion.

But it is clear that the judicial process must in some manner be involved. [M]ere threats that process will be invoked, at least in the absence of any demand for special advantage from it, will be insufficient.

\* \* \* \* \* \*

The ulterior motive may be shown by showing a direct demand for collateral advantage; or it may be inferred from what is said or done about the process. It may also be inferred in some cases from the way process was carried out, ... but even if it is correct to say that motives may be inferred from acts in these cases, the inference is not reversible and it is not possible to infer acts from the existence of an improper motive alone.

Prosser and Keeton, *supra,* at 897–899. The trial court found sufficient evidence to deny appellees' motions for summary judgment on Morn's complaint and the motion for directed verdict as to one of the police officers, implying a finding that Morn's action was not groundless. A directed verdict was granted to one of the officers on a point of law. Even assuming arguendo that the police officers are correct that Mrs. Morn originally filed her lawsuit with no justification and continued the lawsuit after ascertaining that it was groundless, we cannot infer the necessary wilful act "not proper in the regular conduct of the proceeding" from the mere existence of an improper motive alone. With the record devoid of the necessary showing of the elements of the tort, it was error for the trial court to deny Morn's motion for directed verdict. The judgment in favor of the police officers is reversed.

■ Morn also requests relief from the judgment entered against her on her complaint. She argues that the verdict was the result of passion and prejudice and was generated by the admission of evidence of Mr. Morn's reputation, notoriety and background. However, the scope of our appellate review is limited to matters raised in the motion for new trial. *Matcha v. Winn,* 131 Ariz. 115, 638 P.2d 1361 (App.1981). The only issues raised by Morn's motion concerned the court's failure to direct a verdict on the abuse of process counterclaim and to enter judgment in her favor on the counterclaim notwithstanding the verdict. Morn never requested a new trial concerning the jury's verdict on her complaint and is therefore precluded from rais-

ing the issue on appeal. *See Sun Lodge, Inc. v. Romano Development Co.,* 124 Ariz. 540, 606 P.2d 30 (App.1979).

Reversed.

LIVERMORE, P.J., and HOWARD, J., concur.